UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:12-CV-855-H

JAMES G. WALKER, JR.                                                    PLAINTIFF

V.

CITY OF LEBANON, KENTUCKY, *et al.*                                    DEFENDANTS

**MEMORANDUM OPINION**

Plaintiff James G. Walker, Jr.'s action against Defendants arises from his arrest by officers of the Lebanon Police Department and the Marion County Sheriff's Office in the early hours of December 24, 2011. Plaintiff, in his Amended Complaint, sues the City of Lebanon, Kentucky; Officer Tim Abell, in his individual capacity; Sergeant Quinton Cardwell, in his individual capacity; Chief Wally Brady, in his individual capacity; Unknown Officers of the Lebanon Police Department, in their individual capacities; the Marion County Sheriff's Office; Marion County Sheriff Jimmy Clements; Deputy Courtney Deering, in his individual capacity; and Unknown Officers of the Marion County Sheriff's Office, in their individual capacities.

Within a month of filing their answer, the City of Lebanon, Kentucky, Officer Tim Abell, Sergeant Quinton Cardwell, and Chief Wally Brady ("City Defendants") moved for summary judgment on all claims.[1] The Court will first address Defendants' motion as to Plaintiff's 42 U.S.C. § 1983 claims: unlawful arrest, unlawful detention and confinement, excessive force, and

---

[1] Some Defendants in Plaintiff's original Complaint were named in City Defendants' motion for summary judgment. These include the Lebanon Police Department; Officer Tim Abell, in his official capacity; Sergeant Quinton Cardwell, in his official capacity; Chief Wally Brady, in his official capacity; and the Unknown Officers of the Lebanon Police Department, in their official capacities. Unknown Officers of the Lebanon Police Department, in their individual capacities, and the remaining Defendants ("County Defendants") have not yet moved for summary judgment.

refusing or neglecting to prevent harm. Then the Court will turn to Plaintiff's state law claims: assault, battery, malicious prosecution, abuse of process, false imprisonment, intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, and gross negligence.

I.

Discovery is not complete. Therefore, Plaintiff's version of the facts govern these motions. The core of Plaintiff's grievance is that the arresting officers struck and tasered him without apparent reasonable grounds.

On the evening of December 23 and early morning of December 24, 2011, Plaintiff was working at McB's Bar as a karaoke host. Between 11:55pm and 12:00am, Officers Abell and Cardwell, and Deputy Deering responded to a report that someone inside Mr. B's had brandished a handgun in a threatening manner.

Officers Abell and Cardwell approached Plaintiff inside McB's and questioned him about whether he possessed a firearm. Plaintiff responded that he did not and did not own one. The officers demanded to search his person. Plaintiff said that they could, but he needed to attend to work, as a song was ending. Plaintiff stepped onto the stage to queue a new song. Officers Abell and Cardwell grabbed Plaintiff by the belt and pulled him off the stage. Plaintiff is 6'5" and weighs 360 pounds, and he lost his balance and stumbled backwards against a wall. Officers Abell and Cardwell then took Plaintiff to the floor and began striking him. Officer Abell tasered Plaintiff. Plaintiff told the officer to stop because he had a heart condition. Officer Abell then tasered Plaintiff at a higher intensity. Officers Abell and Cardwell, together with Deputy

Deering, flipped the Plaintiff face down, handcuffed him, and searched his person, finding no handgun. They then placed Plaintiff under arrest.[2]

Plaintiff was subsequently charged with (1) disorderly conduct, (2) resisting arrest, and (3) third degree assault on a police officer. At his jury trial, he was convicted of (1) disorderly conduct in the second degree and (2) harassment. He was acquitted of (1) resisting arrest and (2) assault in the fourth degree.

## II.

City Defendants move for summary judgment under Federal Rule of Civil Procedure 56 on all of Plaintiff's claims. To prevail, they must show that there is no genuine issue as to any material fact or that the nonmoving party cannot prove an essential element of its case for which it has the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322−23 (1986). Once accomplished, the nonmoving party can overcome summary judgment by controverting the moving party's argument with specific facts. *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court need not accept unsupported or conclusory allegations. *Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003). However, the Court must view the record and make inferences from the alleged facts in the light most favorable to the nonmoving party. *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 339 (6th Cir. 2010).

The summary judgment standard is different when a defendant raises the affirmative defense of qualified immunity:

> [T]he existence of a disputed, material fact does not *necessarily* preclude summary judgment. Even if there is a material fact in dispute, summary judgment is appropriate if the court finds that—viewing the facts in the light

---

[2] Defendants do not recite an alternate version of the facts except to say that Plaintiff, in his testimony at trial, contended not that he was tackled and beaten but rather that he: stumbled and fell; continued to panic and flail once he was on the ground; did not hear the officer's pleas that he not resist; and was still in a struggle with one of the officers while he actively resisted the efforts of the other officer to taser him into submission.

most favorable to the plaintiff—the plaintiff has failed to establish a violation of clearly established constitutional law.

*Woosley v. City of* Paris, 591 F. Supp. 2d 913, 918 (E.D. Ky. 2008) (citing *Dickerson v. McClellan*, 101 F.3d 1151, 1158 (6th Cir. 1996)).

Here, discovery has only just begun, so summary judgment or dismissal would be inappropriate unless either required as a matter of law or by a virtual absence of supporting factual allegations.

### III.

Plaintiff advances claims under 42 U.S.C. § 1983 against the following City Defendants in their individual capacities: Officer Abell, Sergeant Cardwell, Chief Brady, and unknown officers of the Lebanon Police Department. Those claims include unlawful arrest, unlawful detention and confinement, excessive force, and refusing or neglecting to prevent harm, in violation of the Fourth and Fourteenth Amendments.

"To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006) (citing *West v. Atkins*, 487 U.S. 42, 48 (1998)). The parties do not dispute the second element.

To satisfy prong one, Plaintiff must show that Defendants' conduct violated a right "so clearly established that a reasonable official in that position would have clearly understood that he or she was under an affirmative duty to refrain from such conduct." *Barrett v. Steubenville City Sch.*, 388 F.3d 967, 970 (6th Cir. 2004) (citing *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir. 1992)).

A.

Plaintiff's claims for unlawful arrest and detention against Abell and Cardwell are subject to similar analyses. Unlawful arrest is arrest without probable cause, *see United States v. Torres-Ramos*, 536 F.3d 542, 554 (6th Cir. 2008), and unlawful detention is detention without probable cause. *See Baker v. McCollan*, 443 U.S. 137, 142−43 (1979). Thus, to maintain a claim for unlawful arrest and detention, Plaintiff must prove that the police lacked probable cause to arrest Plaintiff. *See Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002). Probable cause is defined as "whether at that moment the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the [arrestee] had committed or was committing an offense." *Butts v. City of Bowling Green*, 374 F. Supp. 2d 532, 541 (W.D. Ky. 2005) (alteration in original) (quoting *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964))) (internal quotation marks omitted).

Defendants' best argument is that Plaintiff's conviction conclusively establishes probable cause to arrest. The Court agrees. Under Kentucky law, "a criminal conviction may [in certain circumstances] be used for purposes of collateral estoppel in later civil proceedings." *Gossage v. Roberts*, 904 S.W.2d 246, 248 (Ky. Ct. App. 1995) (citing *Roberts v. Wilcox*, 805 S.W.2d 152 (Ky. Ct. App. 1991)). *Gossage* explained:

> The general rule is that a judgment in a former action operates as an estoppel only as to matters which were necessarily involved and determined in the former action, and is not conclusive as to matters which were immaterial or unessential to the determination of the prior action or which were not necessary to uphold the judgment.

904 S.W.2d at 248 (quoting *Sedley v. City of W. Buechel*, 461 S.W.2d 556, 558 (Ky. Ct. App. 1970)). Plaintiff's conviction precludes him from arguing that the officers who arrested and detained him lacked a reasonable belief that Plaintiff had committed or was committing an

offense.  *Cf. Young v. City of Radcliff*, 561 F. Supp. 2d 767, 781 (W.D. Ky. 2008) (Young's menacing conviction precluded his argument that the officers did not have probable cause to arrest him).  Therefore, Plaintiff is "barred from now denying that he engaged in intentional criminal conduct."  *Id.*

For this reason, the Court will dismiss Plaintiff's claims for unlawful arrest and unlawful detention and confinement as to all Defendants.[3]  Because Plaintiff is currently appealing his convictions and a reversal of his conviction is material to the grounds of the Court's dismissal of his claims, his claims will be dismissed without prejudice.

## B.

Plaintiff claims that Officers Abell and Cardwell[4] violated his constitutional rights to be free from the use of excessive force, as guaranteed by the Fourth and Fourteenth Amendments.  Although only Abell is alleged to have used the taser, both are alleged to have struck Plaintiff, and this detail is not an issue at this early stage of the litigation.

Defendants argue that Plaintiff's conviction for harassment bars his claim for excessive force under *Heck v. Humphrey*.  512 U.S. 477 (1994).  In *Heck,* the Supreme Court held that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

*Id.* at 486–87.  Plaintiff's convictions are currently being appealed and thus have not been reversed or otherwise invalidated.  To determine whether a conviction bars a Plaintiff's

---

[3] Although not all Defendants joined the motion for summary judgment, the Court will dismiss Plaintiff's claim as to all Defendants for judicial economy purposes.  With regard to this ground for dismissal, all Defendants are similarly situated.  The Court will dismiss Plaintiff's remaining claims as to all other similarly situated Defendants whenever appropriate.

[4] Plaintiff also alleges that Chief Brady is subject to supervisory individual liability.  The Court will discuss this in Section IV, below.

subsequent § 1983 claim, "the court must look both to the claims raised under § 1983 and to the specific offenses for which the § 1983 claimant was convicted." *Schreiber v. Moe,* 596 F.3d 323, 334 (quoting *Swiecicki v. Delgado,* 463 F.3d 489, 493 (6th Cir. 2006), *abrogated on other grounds by Wallace v. Kato,* 549 U.S. 384 (2007)) (internal quotation marks omitted). That is, "[t]he mere fact that the conviction and the § 1983 claim arise from the same set of facts is irrelevant if the two are consistent with one another." *Schreiber*, 596 F.3d at 334. The *Heck* doctrine applies only where a § 1983 claim would *necessarily* imply the invalidity of the conviction. *See Nelson v. Campbell,* 541 U.S. 637, 647 (2004).

In *Schreiber,* the Sixth Circuit considered whether *Heck* applied to an excessive force claim by a Plaintiff previously convicted of resisting arrest. 596 F.3d at 334. The Court explained that generally, a conviction does not bar an excessive force claim. *See id.* However, there are two circumstances in which such a claim might conflict with a conviction: "when the criminal provision makes lack of excessive force an element of a crime . . . [and] when excessive force is an affirmative defense to the crime." *Id.*

In Kentucky, neither lack of excessive force nor lawful arrest is an element of harassment. "A person is guilty of harassment when, with intent to intimidate, harass, annoy, or alarm another person, he or she: (a) strikes, shoves, kicks, or otherwise subjects him to physical contact . . ."[5] Ky. Rev. Stat. 525.070(1)(a). Therefore, lack of excessive force was not necessary to uphold the judgment.

City Defendants argue that excessive force is a defense to harassment in Kentucky. The Court disagrees as a matter of law. Although the statute defining harassment makes no mention of an affirmative defense, Kentucky Revised Statutes Section 503.050(1) provides: "The use of

---

[5] The Court acknowledges that Ky. Rev. Stat. § 525.070(1)(c) has been recognized as unconstitutional, *see Montell v. Diversified Clinical Servs. Inc.*, CIV.A. 3:12-36-DCR, 2013 WL 4521014, at *5 n.9 (E.D. Ky. Aug. 26, 2013), but understands that this does not implicate Plaintiff's conviction, predicated on § 525.070(1)(a).

physical force by a defendant upon another person is justifiable when the defendant believes that such force is necessary to protect himself against the use or imminent use of unlawful physical force by the other person." Here, Plaintiff's harassment conviction was in all likelihood based on his contact with officers while being taken to the ground—before the alleged beating and repeated tasering.[6] Whether Plaintiff was subjected to excessive force is a question of fact, and his harassment conviction is not dispositive. Otherwise, officers would have carte blanche to do anything to an arrestee after harassing conduct.

In this set of circumstances, the *Heck* doctrine does not preclude Plaintiff's excessive force claims against Abell and Cardwell. Plaintiff could be subject to excessive force without necessarily calling into question a conviction for harassment.

## C.

City Defendants move for summary judgment on Plaintiff's claim for refusal to prevent harm against Abell, Cardwell, and unknown officers of the Lebanon Police Department. Defendants address this claim as a failure to protect claim. However, the Court will construe Plaintiff's claim as a failure to intervene claim, which sounds more similar to "refusal to prevent harm" than failure to protect does.[7] The elements of such a claim are "(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997).

---

[6] The only allegation in the record that could be to the contrary is that Plaintiff may have tried to remove the taser from his body.

[7] Failure to protect is properly alleged in a situation in which harm befalls Plaintiff via a private actor. In that situation, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Salyers v. City of Portsmouth*, 12-6278, 2013 WL 4436536, at *3 (6th Cir. Aug. 21, 2013) (quoting *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989)) (internal quotation marks omitted).

The Sixth Circuit has drawn a distinction between events happening quickly and briefly and those happening slowly or over a longer period of time. In *Ortha v. Rutherford County, Tennessee*, it said that courts should not impose a duty to intervene where, "as here, an entire incident unfolds 'in a matter of seconds.'" 222 Fed. Appx. 498, 506 (6th Cir. 2007) (quoting *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 207 n.3 (1st Cir. 1990), *cert. denied*, 500 U.S. 956 (1991)). The Court went on to explain: "Where we have recognized such a duty, in contrast, the underlying episode of excessive force has spanned a sufficient period of time for a nearby defendant to both perceive what was happening and intercede to stop it." *Ortha*, 222 Fed. Appx. at 506 (citing *Durham v. Nu'man*, 97 F.3d 862, 868 (6th Cir. 1996) (reversing summary judgment award where a beating "lasted approximately ten minutes" and the defendant "watched the beating unfold"), *cert. denied*, 520 U.S. 1157 (1997)).

Here, the actions that Plaintiff alleges constituted excessive force appear to have happened quickly. Plaintiff was allegedly grabbed by the belt, taken to the ground, struck, tasered, and tasered again, all in a short time. At this point, however, no evidence describes how quickly the events transpired. Although Plaintiff's claim seems doubtful, dismissal is premature.

Plaintiff alleges that Defendant Abell participated in the entirety of the actions constituting excessive force. It is nonsensical to advance a claim that Abell failed to intervene against himself. Therefore, the Court will dismiss Plaintiff's failure to intervene claim as to Abell. Plaintiff's failure to intervene claim as to the other City Defendants, however, remains.

### D.

City Defendants also argue that Abell and Cardwell are entitled to qualified immunity on Plaintiff's excessive force and failure to intervene claims.

Government officials are shielded from civil liability when their conduct does not violate clearly established rights of which a reasonable person would have known. *Harlow v.*

*Fitzgerald*, 457 U.S. 800, 818 (1982). This is a two-part test: (1) the Plaintiff must have alleged sufficient facts to show a constitutional violation; and (2) the right at issue must have been "clearly established" at the time of the alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 224 (2009). A right is "clearly established" if "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right"—if in light of existing law, the illegality of the official action is apparent. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

City Defendants argue for qualified immunity solely on the basis that there was no constitutional violation. However, the Court has determined that Plaintiff has successfully created an issue of fact as to whether a constitutional violation occurred with respect to his excessive force and failure to intervene claims. Thus, City Defendants' argument does not defeat Plaintiff's § 1983 claims against Abell and Cardwell.

IV.

Plaintiff's § 1983 claims against police Chief Brady in his individual capacity are based on his role as Abell and Cardwell's supervisor, as he was not present at the time that the alleged offenses occurred. City Defendants do not make arguments relating to § 1983 supervisory liability in their motion, except to correctly point out that liability under *respondeat superior* is not available. Supervisory liability must be based solely on the supervisor's *own* wrongful acts or omissions. *See Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

A § 1983 claim "must fail against a supervisory official unless the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Colvin v. Caruso*, 605 F.3d 282, 292 (6th Cir. 2010) (quoting *Cardinal v. Metrish*, 564 F.3d 794, 802−03 (6th Cir. 2009)) (internal quotation marks omitted). Supervisory liability "must be based on more than the right to control employees." *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir.

2003) (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984), *cert. denied*, 469 U.S. 845 (1984)). "Likewise, simple awareness of employees' misconduct does not lead to supervisory liability." *Leary*, 349 F.3d at 903 (quoting *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 728 (6th Cir. 1996)).

Plaintiff asserts no specific allegations suggesting that Chief Brady in any way encouraged, ratified, or participated in Abell and Cardwell's conduct. For this reason, the Court will dismiss Plaintiff's § 1983 claims against Chief Brady. Similarly, because Plaintiff fails to allege such specific allegations as to Sheriff Clements's participation in Deering's conduct, the Court will dismiss Plaintiff's § 1983 claims against Sheriff Clements.

## V.

The Court will next discuss Plaintiff's claims for municipality liability under 42 U.S.C. § 1983. Plaintiff seeks to hold the City of Lebanon liable for failure to train and failure to supervise the officers. "[A] municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). Alleging that a particular officer was not properly trained, or that a particular injury could have been avoided with better training, does not prove liability. *See Sova v. City of Mt. Pleasant*, 142 F.3d 898, 904 (6th Cir. 1998). To be actionable as a policy or custom under § 1983 and give rise to municipality liability, the failure to train or supervise must evidence a "deliberate indifference" to the rights of the City's residents. *Fultz v. Whittaker*, 261 F. Supp. 2d 767, 780 (W.D. Ky. 2003) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985)). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Board of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997).

Plaintiff argues that the City has adopted policies, practices, or customs that allow the use of excessive force when other more reasonable measures are available. Further, he argues that Abell and Cardwell were negligently trained by the City in the proper use of force and seizure policies and procedures, as evidenced by their conduct on the night of December 23-24, 2011. Plaintiff argues that the City failed to supervise Abell and Cardwell because it should have had knowledge that the wrongs alleged were about to be committed.

Because issues of fact remain as to whether the City has adopted such policies or had such knowledge, the Court will not dismiss Plaintiff's § 1983 claims against the City of Lebanon.

VI.

Plaintiff advances state law claims of assault, battery, malicious prosecution, abuse of process, false imprisonment, intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, and gross negligence. Plaintiff failed to respond to Defendants' arguments against his state law claims of malicious prosecution, abuse of process, false imprisonment, and intentional infliction of emotional distress. Although the Court has discretion to deem the claims abandoned, the Court will analyze each. The Court will first address Plaintiff's claims against Defendants in their individual capacities.

A.

Defendants argue that Plaintiff's convictions collaterally estop him from asserting claims for assault and battery against City Defendants Abell, Cardwell, and unknown officers of the Lebanon Police Department. They essentially make the same argument with regard to assault and battery as they do for Plaintiff's § 1983 excessive force claim.

Under Kentucky law, "[a]ssault is a tort which merely requires the threat of unwanted touching of the victim, while battery requires an actual unwanted touching." *Banks v. Fritsch*,

39 S.W.3d 474, 480 (Ky. Ct. App. 2001). The officers here clearly engaged in unwanted touching. Police officers are privileged to use "reasonably necessary force to preserve order," but not excessive force. *Woosley,* 591 F. Supp. 2d at 923 (citing *Lawson v. Burnett*, 471 S.W.2d 726, 729 (Ky. 1971)). An "officer making an arrest may use such force as may be necessary to make the arrest but no more." *City of Lexington v. Gray,* 499 S.W.2d 72, 74 (Ky. 1973).

City Defendants argue solely that Plaintiff's claims for assault and battery are collaterally estopped by his conviction. For the same reasons that Plaintiff's § 1983 excessive force claim is not collaterally estopped, Plaintiff's state law assault and battery claims are not collaterally estopped. The Court will discuss qualified immunity as to these claims in section VII below.

The Court notes that Plaintiff does not allege that the "unknown officers" potentially at the scene of his arrest came into contact or threatened to come into contact with him in any way. In fact, Plaintiff's failure to intervene claim against them is predicated on the very premise that the unknown officers did not come into contact with him. For this reason, the Court will dismiss Plaintiff's claims for assault and battery against unknown officers of the Lebanon Police Department and unknown officers of Marion County Sheriff's Office.

## B.

Next, the Court will evaluate Plaintiff's claims for malicious prosecution and abuse of process. In Kentucky, a Plaintiff must prove six elements to maintain an action for malicious prosecution: "(1) the institution or continuation of original judicial proceedings, either civil or criminal, or of administrative or disciplinary proceedings, (2) by, or at the instance, of the plaintiff, (3) the termination of such proceedings in defendant's favor, (4) malice in the institution of such proceedings, (5) want or lack of probable cause for the proceedings, and (6) the suffering of damages as a result of the proceedings." *Raine v. Drasin*, 621 S.W.2d 895, 899

(Ky. 1981).  This claim is estopped by Plaintiff's criminal convictions.  Plaintiff cannot meet the requirement of his malicious prosecution claim that probable cause did not exist.

A claim for abuse of process is distinct from malicious prosecution: "'malicious prosecution consists of commencing an action or causing process to issue maliciously or without justification,' while abuse of process entails 'the employment of legal process for some other purpose than that which it was intended by the law to effect.'"  *Kennedy v. City of Villa Hills*, CIV.A. 07-122-DLB, 2009 WL 3112126, at *10 (E.D. Ky. Sept. 23, 2009) (quoting *Simpson v. Laytart*, 962 S.W.2d 392, 394 (Ky. 1998)), *aff'd sub nom. Kennedy v. City of Villa Hills, Ky.*, 635 F.3d 210 (6th Cir. 2011).

To prevail on this claim, Plaintiff must show "(1) an ulterior purpose and (2) a willful act in the use of that process not proper in the regular conduct of the proceeding."  *Simpson*, 962 S.W.2d at 394.  To establish the existence of an ulterior purpose, Plaintiff cannot simply demonstrate a bad intention.  Rather, a plaintiff must show that "the defendant attempted to use the [prior] proceeding as a means to secure a collateral advantage."  *Kennedy*, 2009 WL 3112126, at *10 (quoting *Cromer v. Montgomery*, 2007-CA-002389-MR, 2009 WL 484999, at *6 (Ky. Ct. App. Feb. 27, 2009)) (internal quotation marks omitted).  Here, Plaintiff does not allege that any of the officers attempted to secure a collateral advantage via any of the charges filed against him.

For these reasons, Plaintiff's claims for malicious prosecution and abuse of process fail as a matter of law.  However, since dismissal rests on a conviction that is currently being appealed, these claims will be dismissed without prejudice.

C.

Plaintiff claims that he was falsely imprisoned. Under Kentucky law, claims for false imprisonment and false arrest are subject to the same analysis. *See Dunn v. Felty*, 226 S.W.3d 68, 71 (Ky. 2007). An officer is liable unless he or she has a privilege to detain the individual. *See id.* One such privilege is "an arrest without a warrant in which the officer has probable cause . . . to believe that a crime was committed and that the plaintiff committed it." *Id.* (citation omitted). As discussed in the sections above addressing Plaintiff's 42 U.S.C. § 1983 claims for unlawful arrest and detention, Plaintiff's conviction precludes him from bringing an action predicated on lack of probable cause. Again, since dismissal rests on a conviction that is currently being appealed, these claims will be dismissed without prejudice.

D.

To prevail on a claim for intentional infliction of emotional distress, Plaintiff must show that (1) "defendant's conduct was intentional or reckless," (2) "that the conduct was so outrageous and intolerable so as to offend generally accepted standards of morality and decency," (3) "that a causal connection exists between the conduct complained of and the distress suffered," and (4) "that the resulting emotional distress was severe." *Brewer v. Hillard*, 15 S.W.3d 1, 6 (Ky. Ct. App. 1999).

Negligent infliction of emotional distress is analyzed in accordance with common law negligence: (1) the defendant must have owed a duty of care to the plaintiff, (2) which it breached, (3) legally causing (4) injury to the plaintiff. *See Osbourne v. Keeney*, 399 S.W.3d 1, 17 (Ky. 2012). In addition, a plaintiff's emotional distress "must be severe or serious." *Odom v. Hiland*, 5:12CV-P124-R, 2013 WL 2297071, at *10 (W.D. Ky. May 24, 2013) (citing *Osborne* 399 S.W.3d at 9).

The Court need not analyze the above elements. Kentucky courts have often viewed the tort of intentional infliction of emotional distress as a gap-filler. *See Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 298−99 (Ky. Ct. App. 1993). *Rigazio* explained:

> [W]here an actor's conduct amounts to the commission of one of the traditional torts such as assault, battery or negligence for which recovery for emotional distress is allowed, and the conduct was not intended only to cause extreme emotional distress in the victim, the tort of outrage will not lie.

853 S.W. 2d at 299. Here, Plaintiff has not presented any evidence from which a jury could infer that the officers' actions were motivated solely by a desire to cause Plaintiff extreme emotional distress. Therefore, this claim is improper insofar as it duplicates Plaintiff's other claims for assault and battery, for which recovery of emotional distress is permitted.

This Court has similarly found the tort of negligent infliction of emotional distress to be duplicative. *See Scherzinger v. Bolton*, 3:11-CV-11-H, 2013 WL 3166163, at *10 (W.D. Ky. June 20, 2013); *see also Woosley*, 591 F. Supp. 2d at 923.

For these reasons, the Court will dismiss Plaintiff's claim for intentional and negligent infliction of emotional distress as to all Defendants.

E.

Plaintiff advances claims of negligence and gross negligence against all City Defendants, on different grounds.

First, Plaintiff argues that Abell and Cardwell owed Plaintiff a duty of care, which they breached, causing injury. However, negligence is not the proper action to bring to address Abell and Cardwell's conduct. The Western District of Kentucky in *Ali v. City of Louisville* explained:

> There is no such thing as a negligent battery. Where the officer may have mistakenly believed that he needed to use the amount of force that he did, that does not change the fact that initial action was intentional, or alter the objective analysis of whether the force he ultimately used was excessive. Thus, where an unwanted touching (a battery), which is inherent in any arrest, escalates beyond

that which is reasonably necessary into excessive force, the cause of action is solely for battery, with the officer's privileged use of force ending when the excessive force began. To permit a separate claim for negligence creates the risk that a jury would assume that, even if no excessive force were used, the officer might somehow still be liable for some undefined negligence. Such a result is doctrinally unsupportable and unacceptable, because each time an officer uses force, he commits an intentional act of battery for which he is liable, unless he is clothed by a privilege permitting him to use a reasonable amount of force . . .

3:05CV-427-R, 2006 WL 2663018, at *8 (W.D. Ky. Sept. 15, 2006) (citation omitted). For this reason, the Court will dismiss Plaintiff's claims of negligence and gross negligence against Abell and Cardwell, and Deering.

Plaintiff also contends that Defendant City of Lebanon and Chief Brady[8] owed a duty of care to hire, train, and supervise Abell and Cardwell, which they breached. "[An] employer may be held liable for negligent supervision only if he or she knew or had reason to know of the risk that the employment created." *Booker v. GTE.net LLC*, 350 F.3d 515, 517−18 (6th Cir. 2003).

City Defendants argue again that Plaintiff is collaterally estopped from challenging the amount of force used to effect his arrest. As previously described, Plaintiff is not collaterally estopped. Further, issues of fact remain as to (1) whether Abell and/or Cardwell committed a tort and (2) whether the City had the requisite knowledge. For these reasons, the Court will not dismiss Plaintiff's claims for negligence against the City of Lebanon. As punitive damages are not recoverable against governmental entities under Kentucky law, the Court will dismiss Plaintiff's gross negligence claim against the City of Lebanon and Marion County.[9]

---

[8] Chief Brady is mentioned in Plaintiff's gross negligence claim but not his negligence claim.

[9] "Under the 'general rule,' '[p]unitive damages may not be recovered against such *governmental entities* as municipal corporations, school districts, cities, counties, or the state and its political subdivisions.'" *Phelps v. Louisville Water Co.*, 103 S.W.3d 46, 58 (Ky. 2003) (quoting 57 Am.Jur.2d, *Municipal, County, School, and State Tort Liability*, § 648 (2002)). *See also Baker v. Warren Cnty. Fiscal Court, ex rel. City-Cnty. Planning Comm'n of Warren Cnty.*, 106-CV-153-R, 2007 WL 486735, at *4 (W.D. Ky. Feb. 12, 2007) (citing Ky. Rev. Stat. 65.2002 for the proposition that Kentucky law precludes the recovery of punitive damages against local governments.)

In addition, the City of Lebanon, not Chief Brady, was Abell and Cardwell's employer. For this reason, the Court will dismiss Plaintiff's claims for gross negligence against Chief Brady and Sheriff Clements.

F.

Finally, Plaintiff argues that the City of Lebanon and Chief Brady are liable for any torts committed by Abell and Cardwell under the strict liability doctrine of *respondeat superior*. City Defendants argue that Chief Brady cannot be held liable as a supervisor because he was not Abell and Cardwell's employer. Plaintiff does not dispute this in its response.

The Court has already determined that the only state law claims moving forward against Abell and Cardwell are for intentional torts—assault and battery. Under the doctrine of *respondeat superior*, an employer could be held liable for the intentional torts of its employee if it was committed in the scope of employment. *See Patterson v. Blair*, 172 S.W.3d 361, 367 (Ky. 2005). Defendants are correct that Chief Brady cannot be held liable under *respondeat superior*. The City of Lebanon, not he, was Abell and Cardwell's employer. *Cf. Cabinet for Families & Children v. Cummings*, 163 S.W.3d 425, 433 (Ky. 2005) (construing the Kentucky Whistleblower Act to give rise to *respondeat superior* liability for the employer as opposed to individual liability for the supervisor; citing cases supporting no individual liability for supervisors, and contrasting that with employer liability, under other state whistleblower statutes, Title VII, and the False Claims Act).

For this reason, the Court will dismiss Plaintiff's remaining state law claims for assault and battery against Chief Brady and Sheriff Clements, which are predicated on *respondeat superior* liability.

It is well established that a municipality may be held liable for an intentional tort committed by one of its employees if the purpose of the act giving rise to the tort was to further the municipality's interests. *See Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 732 (Ky. 2009). The focus is on the employee's motive. *See id.* Because Abell and Cardwell were effecting an arrest within the scope of their employment, the Court will not dismiss Plaintiff's claims against the City of Lebanon for assault and battery under the theory of *respondeat superior*.

VII.

City Defendants argue that qualified immunity absolves Abell and Cardwell from all of Plaintiff's state law claims. Qualified immunity requires a different analysis in the context of Kentucky law than federal law. The Court will briefly explain the standard.

In Kentucky, public employees are entitled to qualified immunity from tort liability for "good faith judgment calls made in a legally uncertain environment." *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2004). Qualified official immunity shields the officers from personal liability for (1) discretionary acts (2) performed in good faith (3) within their scope of authority. *See id.*

In Kentucky, a discretionary act is one that "require[s] the exercise of reason in the adaptation of a means to an end, and discretion in determining how or whether the act shall be done or the course pursued." *Upchurch v. Clinton Cnty.*, 330 S.W.2d 428, 430 (Ky. 1959). Compare a ministerial act, which is "absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Yanero*, 65 S.W.3d at 522.

Abell and Cardwell's decision to administer force in an effort to maintain order and control is a discretionary act. *See Scherzinger*, 2013 WL 3166163, at *9. Brady's supervision

and training of the officers is also discretionary. *See Rowan Cnty. v. Sloas*, 201 S.W.3d 469, 480−81 (Ky. 2006). In addition, the Court is satisfied that the officers were acting within the scope of their authority. Therefore, the only remaining issue is whether the officers acted in good faith with respect to each state tort claim.

Plaintiff must prove that the Officers did not perform the discretionary act in good faith. *Yanero,* 65 S.W.3d at 523. "Bad faith exists if either a public employee violated a constitutional, statutory, or other clearly established right of which a reasonable person would have known or if the public employee 'willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive.'" *Woosley,* 591 F. Supp. 2d at 922 (quoting *Yanero*, 65 S.W.3d at 523).

City Defendants assert qualified immunity solely on the grounds that Plaintiff's conviction of harassment serves to collaterally estop him from challenging the amount of force used to effect his arrest, such that good faith must still be presumed. This argument seems to only address Plaintiff's state law claims of assault and battery.

With respect to Plaintiff's assault and battery claims, the Court cannot conclusively determine whether the officers used excessive force, such that Plaintiff's constitutional rights were violated. *See Scherzinger,* 2013 WL 3166163, at *9. Abell and Cardwell are not entitled to qualified immunity as to Plaintiff's claims for assault and battery.

VIII.

The Marion County Sheriff's Office, Deputy Courtney Deering, Sheriff Jimmy Clements, and unknown officers, collectively "County Defendants," filed an answer to Plaintiff's amended complaint. In it, they argue that the Marion County Sheriff's Office is not a legal entity that can be sued. The Court will resolve this issue now.

"The [Marion] County Sheriff's Office is not a 'person' subject to suit under § 1983 because municipal departments are not suable under § 1983." *Stinnett v. Eaton*, 1:11CV-P30-M, 2011 WL 1527814, at *1 (W.D. Ky. Apr. 20, 2011) (citing *Petty v. County of Franklin, Ohio,* 478 F.3d 341, 347 (6th Cir. 2007)); *Rhodes v. McDannel,* 945 F.2d 117, 120 (6th Cir. 1991). For this reason, Plaintiff's 42 U.S.C. § 1983 claims against the Marion County Sheriff's Office will be construed as claims against Marion County. *See Stinnett*, 2011 WL 1527814, at *1.

Similarly, under Kentucky law, sheriff departments of local governments "are not entities which may be sued and the local government itself is the proper party to address a plaintiff's complaint against a police department." *Shemwell v. Heller*, 3:10-CV-336-CRS, 2012 WL 1038114, at *2 (W.D. Ky. Mar. 27, 2012) (citing *Matthews v. Jones,* 35 F.3d 1046, 1049 (6th Cir. 1994)). Again, Marion County would be the proper party.

Relatedly, Plaintiff advances claims against Sheriff Clements in his official and individual capacity. "Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham,* 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 691 n.55 (1978)). Therefore, the Court will dismiss any claims Plaintiff asserts against Sheriff Clements in his official capacity as redundant.

The Court will enter an order consistent with this Memorandum Opinion.


cc:     Counsel of Record